**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Angelica Rizik, et al., | No. CV-25-00776-PHX-KML |
| Plaintiffs, | **ORDER** |
| v. | |
| Jake William Virnig, et al., | |
| Defendants. | |

Angelica Rizik and Jake Virnig are embroiled in acrimonious child custody and parental rights proceedings in state court. Plaintiffs Angelica and her father, David Rizik, believe defendants Jake Virnig, Kameren Wilburn, Stephen Rayment, and Systech International committed a variety of unlawful acts during those proceedings. The only federal claim in the amended complaint—and the basis for federal jurisdiction—is a civil Racketeer Influenced and Corrupt Organizations Act (RICO) claim against all defendants. (Doc. 33.) Because plaintiffs have not stated a RICO claim, defendants' motion to dismiss is granted.

**I.     Background**

Angelica Rizik and Jake Virnig had a daughter, MC, together in 2018. (Doc. 33 at 1.) After MC's birth, Virnig allegedly rarely visited her, physically and emotionally abused Angelica and MC, and in October 2020 signed a notarized agreement to terminate his parental rights. (Doc. 33 at 1-2, 5.) In 2021, after the Juvenile Department of the Maricopa County Superior Court accepted this agreement and terminated Virnig's parental rights, Virnig claimed the agreement was forged and began attempting to regain his rights. (Doc.

33 at 4-5.) The juvenile court proceeding culminated in a 44-day trial in 2023 which restored Virnig's parental rights. (Doc. 33 at 6.) That decision is currently on appeal. (Doc. 33 at 6.)

During the juvenile court litigation, Virnig allegedly filed a motion requesting a DNA test, asserting MC was the product of an incestuous relationship between Angelica and her father and that Angelica sexually abused MC. (Doc. 33 at 20.) Plaintiffs also allege Virnig concealed his handwriting expert's reports. (Doc. 33 at 11.) That expert's final report supported Virnig's claim his signatures on documents terminating his parental rights were forged, but her previous reports reached the opposite conclusion. (Doc. 33 at 11.)

Angelica's and Virnig's families both became involved in the juvenile proceeding in circumstances that are difficult to understand. Virnig allegedly filed a motion for attorneys' fees in the juvenile proceeding seeking $2,000,000 in fees from Angelica and her parents, despite her parents not being parties to the case (and despite attorneys' fees not being available in such proceedings). (Doc. 33 at 7.) Meanwhile, Virnig's uncle, Stephen Rayment, participated in and funded Virnig's litigation. (Doc. 33 at 7.) Rayment contributed more than $2,600,000, which Rayment transferred via international wires pursuant to litigation agreements which provided Virnig an "open checkbook" for litigation costs in exchange for a percentage of any monies awarded to Virnig from that litigation. (Doc. 33 at 8.) These litigation agreements were allegedly falsely notarized, because the notary later signed a declaration that she did not notarize the agreements and filed a police report (presumably against Virnig and/or Rayment). (Doc. 33 at 11–12.) Rayment also allegedly sent attorneys employed by Rayment's consulting company, Systech International, to Arizona juvenile court to assist Virnig. (Doc. 33 at 9.) Virnig's then-girlfriend, Kameren Wilburn, was also involved. After a social worker investigated Virnig and concluded he should not regain his parental rights, Virnig "revealed" Wilburn—at his request—had recorded the social worker's meeting with Virnig via a Ring video application. (Doc. 33 at 13.) Plaintiffs also believe Wilburn "hacked" into the Riziks' Roku television account and allege she accessed unnamed cloud-based and/or electronic

- 2 -

communication accounts at Virnig's direction. (Doc. 33 at 13-14.)

Virnig allegedly attempted to inflict financial harm on the Riziks, including with an unsuccessful motion for $2,000,000 in attorneys' fees (Doc. 33 at 7), a settlement demand requesting restored parental rights and $1,400,000 (Doc. 33 at 9), and a March 2025 settlement demand requesting an equal parenting schedule and $10,000,000 in exchange for a release of claims (Doc. 33 at 9-10). Additionally, in July 2025, police and a child safety officer responded to a complaint which asserted MC had been sexually abused, resulting in an investigation and officials interviewing MC. (Doc. 33 at 14.) During this investigation, Angelica received a call from an individual who referred to himself as "Rez," whose number appeared to come from the Miami Police Department, and who stated he was taking over the investigation and would be conducting a home visit at her address. (Doc. 33 at 14.) Angelica reached out to the police on the day of the home visit and was told someone had been impersonating a police officer. (Doc. 33 at 15.) The investigation was later "closed as meritless." (Doc. 33 at 14.) Plaintiffs allege Virnig and other defendants "are the only ones likely to have submitted this false" report, particularly because it mirrored claims made by Virnig during the juvenile court litigation. (Doc. 33 at 14.) They also allege "Rez" was Virnig or an agent of Virnig, because only close family members and Virnig knew Angelica's Florida address. (Doc. 33 at 14-15.)

In March 2025, with multiple state-court lawsuits still pending, plaintiffs filed this federal case against Virnig, Wilburn, Rayment, and Systech International alleging a RICO claim and state-law claims for abuse of process, aiding and abetting abuse of process, conspiracy, and intentional infliction of emotional distress. On August 22, 2025, defendants Virnig, Rayment, and Systech International filed a motion to dismiss (Doc. 40) and Wilburn filed a separate motion to dismiss (Doc. 43).

**II.    Legal Standard**

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)

(internal citations omitted)). This is not a "probability requirement," but a requirement that the factual allegations show "more than a sheer possibility that a defendant has acted unlawfully." *Id*. A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. "Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id*. at 679.

### III. Analysis

#### A. Service on Rayment

Angelica Rizik lives in Florida while David Rizik, Virnig, and Wilburn live in Arizona; Rayment and Systech International are foreign residents. (Doc. 33 at 4.) Rayment seeks dismissal based on allegedly-defective service of process.

On March 10 and 11, 2025, plaintiffs attempted to serve Rayment at an address in Florida where they believed he was staying. (Doc. 11 at 5.) The attempts were unsuccessful and they subsequently moved for alternative service. (Doc. 11 at 5.) On May 23, 2025, this court granted the motion and permitted plaintiffs to serve Rayment by mail and email to Virnig's counsel in family court litigation; email to Rayment's business email address; and mail to Rayment's last known business address. (Doc. 12 at 4-5.) The court did so accepting plaintiffs' allegations that Rayment was aware of the litigation and spent at least some time in Dubai, UAE, which is not a signatory to the Hague Service Convention (Doc. 12 at 3). *See* Hague Service Convention, Nov. 15, 1965, 20 U.S.T. 361, 658 U.N.T.S. 163 (describing rules for service of process to defendants in foreign signatory jurisdictions).

Rayment now argues he has not set foot in Dubai since 2023 and instead resides in the Cayman Islands, which is bound by the Hague Convention. (Doc. 40 at 8, *see* Doc. 40-1 at 372). Defendants further argue plaintiffs "failed to show that any of the methods authorized by the Court comply with the Convention's mandatory procedures for service in the Cayman Islands." (Doc. 40 at 8.) Plaintiffs' opposition argues they made "a good faith effort to locate Rayment" (Doc. 49 at 5), but regardless, the improper service

argument fails because it is incorrect on the law.

The first article of the Hague Convention states: "[t]his Convention shall not apply where the address of the person to be served with the document is not known." Hague Service Convention, art. 1. Because plaintiffs did not know Rayment's address when they moved for alternative service and still do not know his precise address now, the Hague Convention does not apply even accepting he now lives in the Cayman Islands. The order permitting email (and other mail) service stands.

### B. RICO Claims

The Racketeer Influenced and Corrupt Organizations Act prohibits racketeering activity, including conspiracy to racketeer. *Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 482-83 (1985); *see also H.J. Inc. v. Nw. Bell Tel. Co.*, 492 U.S. 229, 232-33 (1989). A civil RICO claim requires allegations establishing five elements: "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity (known as 'predicate acts') (5) causing injury to the plaintiff's 'business or property.'" *Grimmett v. Brown*, 75 F.3d 506, 510 (9th Cir. 1996); *see also* 18 U.S.C. § 1961 *et seq*. These predicate acts include acts chargeable under certain state criminal laws; acts indictable under certain federal criminal laws; and any bankruptcy, securities fraud, or drug-related activity which is punishable under federal law. *Id*. at 481-481; *see* U.S.C. §§ 1961-1962. Mail and wire fraud and extortion are qualifying predicate acts under RICO, as plaintiffs allege and defendants concede. (*See* Doc. 40 at 13.) To prove a pattern of predicate acts, a plaintiff must show "the predicate criminal acts [to] be 'related' and 'continuous.'" *Allwaste, Inc. v. Hecht*, 65 F.3d 1523, 1527 (9th Cir. 1995).

Though the substantive RICO offense requires two or more predicate acts, an alleged conspirator need not independently commit two predicate acts to be liable and rather must only conspire to violate RICO. *Salinas v. United States*, 522 U.S. 52, 65 (1997). But "[i]n some cases the connection the defendant had to the alleged enterprise or to the conspiracy to further it may be tenuous enough so that his own commission of two predicate acts may become an important part" of the case. *Id*.

### 1. RICO claim against Wilburn

Plaintiffs base their RICO claim against Wilburn on two events. First, plaintiffs allege Wilburn illegally recorded a conversation between Virnig and social worker Polly Thomas via a Ring camera, which plaintiffs characterize as a violation of federal wiretapping law 18 U.S.C. § 2510 *et seq.* (Doc. 49 at 16) and Arizona state law (Doc. 33 at 13). Second, plaintiffs allege Wilburn "hacked into cloud-based accounts that belong to the Riziks," the Riziks' televisions, and/or their electronic communications accounts, at Virnig's direction and in violation of 18 U.S.C. § 1030. (Doc. 33 at 13.) Plaintiffs allege no facts explaining why they concluded their accounts were hacked, by whom (if anyone other than Wilburn was involved), and at whose direction.

Neither event can support a RICO claim against Wilburn because Wilburn's actions as alleged do not violate Arizona or federal law. Under A.R.S. §§ 13-3005, 13-3012(9), and 18 U.S.C. § 2511(2)(d), it is legal to record a conversation if one party to that conversation consents, and plaintiffs allege Virnig consented to the recording (Doc. 33 at 13). *See Scotti v. City of Phoenix*, No. 2:09-CV-01264-TMB, 2013 WL 12210779, at *11 (D. Ariz. Jan. 23, 2013) (intercepting conversation constitutes criminal activity unless "one party to the communication or conversation consents"). And plaintiffs do not allege with sufficient specificity that Wilburn hacked into the Riziks' televisions. The complaint does not explain why plaintiffs believe their accounts were hacked or why they concluded Wilburn was the culprit, nor does it explain the purpose (beyond "to gain leverage") or consequence of the alleged hacking. (Doc. 49 at 3.) The bare conclusion that Wilburn unlawfully accessed these accounts does not plausibly allege facts showing she might be liable under 18 U.S.C. § 1030. *Ashcroft*, 556 U.S. at 678.

Plaintiffs do not allege Wilburn ever met other enterprise members or discussed the enterprise's goals. Her connection to the alleged enterprise is tenuous, yet plaintiffs have not shown she committed *any* predicate act (or wrongful activity more generally). *See Salinas*, 522 U.S. at 65. The RICO claim against Wilburn cannot survive based only on her knowledge of Virnig's behavior (Doc. 33 at 16-17); to conspire, she must also have agreed

to "contribute to [the] common enterprise." *See Baumer v. Pachl*, 8 F.3d 1341, 1346-47 (9th Cir. 1993) (allegations supporting the defendant's assent are necessary to plead a civil RICO conspiracy). Wilburn's motion to dismiss is granted with leave to amend.

### 2. RICO claim against Systech International, Inc.

Plaintiffs allege even fewer facts regarding Systech's involvement in the alleged RICO enterprise. They allege Systech "[got] involved" in Virnig's litigation via the "sham" litigation agreements and "funded and directed Virnig's strategy," but do not explain its relationship to the agreements, how much money the company contributed, whether the funding was company money, to whom Systech gave the money, how Systech directed Virnig's strategy, or for what purpose. (Doc. 33 at 8). The sole specific allegation is that Rayment "sent attorneys employed by Systech International to Arizona to assist [sic] court hearings and otherwise assist Virnig's pattern of abuse." (Doc. 33 at 7.) And that allegation identifies only one such attorney, Dai Edwards, with no further factual details explaining his role in the court hearings or how he "otherwise assist[ed] Virnig's pattern of abuse.". (Doc. 33 at 7, 17.) Furthering the confusion, plaintiffs also state Edwards is Rayment's "own barrister," making it unclear whether Edwards acted in his capacity as Rayment's lawyer or as a Systech employee. (Doc. 33 at 17.)

Ultimately, plaintiffs do not properly allege Systech's involvement in these events and do not allege it, or any employee, participated in any predicate acts. *See Salinas*, 522 U.S. at 65. The RICO claim against Systech is dismissed with leave to amend.

### 3. RICO claim against Virnig and Rayment

To maintain a RICO claim against Virnig and Rayment, plaintiffs must allege an enterprise conducted a pattern of racketeering activity which caused injury. *Grimmett*, 75 F.3d at 510. Plaintiffs have not adequately alleged an "enterprise" existed.

Plaintiffs' allegations intended to show defendants formed an enterprise are insufficient. To allege a RICO enterprise, plaintiffs need only allege the existence of "a group of persons associated together for a common purpose of engaging in a course of conduct," proved by evidence of ongoing organization and the functioning of associates as

a continuing unit. *Boyle v. United States*, 556 U.S. 938, 944-45 (2009). This is a low bar, but an association-in-fact enterprise needs at a minimum "a purpose, relationships among those associated with the enterprise, and longevity sufficient to permit these associates to pursue the enterprise's purpose." *Id*. at 946. An enterprise "is an entity separate and apart from the pattern of activity in which it engages" and plaintiffs must show defendants acted on behalf of the enterprise itself. *United States v. Turkette*, 452 U.S. 576, 583 (1981); *see also Reves v. Ernst & Young*, 507 U.S. 170, 185 (1993) ("liability depends on showing that the defendants conducted or participated in the conduct of the '*enterprise's* affairs,' not just their *own* affairs"). Namely, plaintiffs must show each defendant "participate[d] in the operation or management of the enterprise itself." *Reves*, 507 U.S. at 185.

Plaintiffs' pleadings do not make clear the "common purpose" of the alleged enterprise. *Boyle*, 556 U.S. at 946. The complaint at times suggests extortion and financial purposes (Doc. 33 at 9, 10, 15 ("Virnig's improper monetary goal," "goal to extort the Riziks"), vindictive purposes (Doc. 33 at 7 ("his goal is to incarcerate Angelica and bankrupt the Riziks")), and includes a list of acts characterized as purposes (Doc. 33 at 18 (listing as "purposes" supporting the RICO claim: "entering into sham litigation funding agreements," "making extortionist demands," and filing documents alleging MC is the product of incest). Plaintiffs' response brief states "[d]efendants' acts share a common purpose (pressure and punish the Riziks for money and destroy their reputation)." (Doc. 49 at 4.) Each of these purposes appears driven by *Virnig's* goals; nothing suggests Systech, Wilburn, or Rayment shared Virnig's desire to gain money from the Riziks and destroy their reputations. The facts do not indicate that each alleged associate acted on behalf of a separate *enterprise's* goal, rather than aiding a friend or relative in his individual pursuit. *Reves*, 507 U.S. 170 at 185.

Plaintiffs also fail to sufficiently describe the relationships among those associated with the enterprise. *Boyle*, 556 U.S. at 946. As discussed above, the allegations against Wilburn and Systech do not properly allege they conducted wrongful activity, and no facts are alleged regarding the structure of the enterprise or role of any particular defendant. *See*

*Staff Holdings, Inc. v. Raygoza*, No. SACV1700983CJCDFMX, 2017 WL 7410981, at *3 (C.D. Cal. Sept. 27, 2017) (dismissing RICO claims where complaint did not allege the defendants met and planned the illegal activity, "discussed which participant would take on which roles, or . . . discussed how the proceeds of their activity would be split among them"). Without any allegations as to the enterprise's structure and operation, there is no RICO enterprise. *Loomer v. Zuckerberg*, No. 23-3158, 2025 WL 927186, at *2 (9th Cir. Mar. 27, 2025), *cert. denied*, No. 25-19, 2025 WL 2824501 (U.S. Oct. 6, 2025) (affirming dismissal where complaint contained no "allegations of an actual structure"). Plaintiffs need only allege the enterprise had "some sort of framework, formal or informal, for carrying out its objectives." *United States v. Bingham*, 653 F.3d 983, 992 (9th Cir. 2011) (citing *Boyle*, 556 U.S. at 951). But the complaint does not lay out any such framework, let alone allegations the associates functioned as a "continuing unit to achieve a common purpose." *Boyle*, 556 U.S. at 951.

This is enough for the RICO claims to fail. But additional issues also doom the allegations of a pattern of predicate acts.

Setting aside the hacking and videotaping allegations as predicate acts for the reasons described above, only the false police report and police impersonation arguably occurred outside the context of litigation. But the complaint does not tie Virnig to those acts: plaintiffs merely allege these events occurred and conclude Virnig was the most likely actor (Doc. 33 at 14-15), which is not sufficient.[1] *Ashcroft*, 556 U.S. at 678.

And the litigation-related predicates themselves suffer from a variety of flaws. First, RICO claims based on litigation activity are disfavored unless the facts approach sham litigation, *Sosa v. DIRECTV, Inc.,* 437 F.3d 923, 939-40 (9th Cir. 2006), and the allegations do not plausibly reach that level here. "[E]ngaging in a litigation strategy designed to exhaust Plaintiff Angelica Rizik's resources," filing inconsistent expert reports, and filing

---

[1] Without these non-litigation predicate events, there is also no continuity; all remaining predicate events took place during a short, defined period of litigation, and presumably will end once the litigation terminates. *See Allwaste*, 65 F.3d at 1527 (RICO continuity may be shown either with related predicate acts occurring over a substantial period of time or with a threat of indefinite repetition).

- 9 -

documents with inaccurate and damaging accusations is morally (and perhaps ethically) reprehensible, but it does not constitute sham litigation or an illegal RICO predicate act. (Doc. 33 at 18.) Second, the litigation-related mail and wire fraud allegations do not meet Rule 9(b)'s pleading requirements. *Schreiber Distrib. Co. v. Serv-Well Furniture Co.*, 806 F.2d 1393, 1400-01 (9th Cir. 1986) (applying Rule 9(b) pleading standards to "circumstances of the fraudulent acts that form the alleged pattern of racketeering activity"). Third, as defendants point out, it is unclear who is defrauded by an improperly-notarized litigation funding agreement when these arrangements are generally permissible and both parties to the agreement consent with full knowledge of its terms. *See V5 Techs. v. Switch, Ltd.*, 334 F.R.D. 306, 311 (D. Nev. 2019) (litigation funding agreements legal and not discoverable outside special litigation contexts); *see also Eclectic Props. E., LLC v. Marcus & Millichap Co.*, 751 F.3d 990, 997 (9th Cir. 2014) (describing mail and wire fraud elements). Finally, as plaintiffs apparently concede, extortion as a predicate act requires a defendant actually obtain something from a victim and plaintiffs do not make such an allegation. *See Block v. Snohomish Cnty.*, No. C14-235RAJ, 2015 WL 4164821, at *5 (W.D. Wash. July 8, 2015), *aff'd*, 733 F. App'x 884 (9th Cir. 2018); *see also Stichting Pensioenfonds ABP v. Countrywide Fin. Corp.*, 802 F. Supp. 2d 1125, 1132 (C.D. Cal. 2011) ("failure to respond in an opposition brief to an argument put forward in an opening brief constitutes waiver or abandonment in regard to the uncontested issue" (simplified)).

For all these reasons, the RICO claim is dismissed with leave to amend.

### 4. RICO conspiracy claims

Without properly stating a RICO claim, plaintiffs' theory of RICO conspiracy also fails. "Plaintiffs cannot claim that a conspiracy to violate RICO existed if they do not adequately plead a substantive violation of RICO." *Howard v. Am. Online Inc.*, 208 F.3d 741, 751 (9th Cir. 2000). The conspiracy claim is dismissed with leave to amend.

### C. Supplemental Jurisdiction Over State Claims

Having dismissed the federal claim, the court must determine whether to exercise supplemental jurisdiction over the remaining state-law claims. 28 U.S.C. § 1367(c)(3). The

court would do so if hearing those state claims "comports with the underlying objective of most sensibly accommodat[ing] the values of economy, convenience, fairness, and comity." *Exec. Software N. Am., Inc. v. U.S. Dist. Ct. for Cent. Dist. of California*, 24 F.3d 1545, 1557 (9th Cir. 1994), *overruled on other grounds by California Dep't of Water Res. v. Powerex Corp.*, 533 F.3d 1087 (9th Cir. 2008)). But "in the usual case in which all federal-law claims are eliminated before trial, the balance of factors will point toward declining to exercise jurisdiction over the remaining state-law claims." *Slidewaters LLC v. Washington State Dep't of Lab. & Indus.*, 4 F.4th 747, 762 (9th Cir. 2021) (simplified).

Here, the remaining disputes are state-law claims involving events that occurred largely within the state judicial system. The case has not progressed meaningfully in federal court and the factors of economy, convenience, fairness, and comity favor dismissal without prejudice to allow plaintiffs to file in state court or, if plaintiffs elect to amend their federal claim, to reallege their associated state claims in the amended complaint.

### IV.    Leave to Amend

Plaintiffs are granted leave to amend, but before doing so, they should carefully consider whether there is a realistic possibility they can state a viable RICO claim. The analysis above identifies multiple independent problems with several RICO elements, and it is unlikely plaintiffs will be able to overcome them without fundamentally altering their theory of the claim and the factual allegations on which it rests.

### V.    Conclusion

The RICO claim against Wilburn and Systech is based on insufficient factual allegations and is dismissed with leave to amend. The RICO claim against Virnig and Rayment is not pleaded with sufficient specificity to show an enterprise existed or a pattern of viable predicate acts took place. Without the federal RICO claim, only state-law claims remain and the court declines to exercise supplemental jurisdiction over them.

/

/

/

1  Accordingly,

2  **IT IS ORDERED** the Motions to Dismiss (Doc. 40, 43) are **GRANTED WITH**
3  **LEAVE TO AMEND**. No later than **January 7, 2026**, plaintiffs shall file an amended
4  complaint. If no amended complaint is filed by that date, the Clerk of Court shall enter a
5  judgment of dismissal with prejudice of the federal RICO claim and a dismissal without
6  prejudice of all remaining claims.

7  Dated this 12th day of December, 2025.

*[signature]*
Honorable Krissa M. Lanham
United States District Judge