**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

|  |  |
|---|---|
| Angelica Rizik, et al., | No. CV-25-00776-PHX-KML |
| Plaintiffs, | **ORDER** |
| v. | |
| Jake William Virnig, et al., | |
| Defendants. | |

Angelica Rizik and Jake Virnig are parties in state-court child custody and parental rights proceedings. Plaintiffs Angelica and her father, David Rizik, filed this lawsuit alleging Virnig, his uncle Stephen Rayment, and Rayment's employer Systech International violated various laws, including the Racketeer Influenced and Corrupt Organizations Act ("RICO"). That claim supplies the only basis for federal jurisdiction. This court previously granted defendants' motion to dismiss (Doc. 58) and plaintiffs amended their complaint (Doc. 62). Defendants' current motion to dismiss (Doc. 65) is granted without leave to amend.

## I. Factual Background

Angelica Rizik and Jake Virnig had a daughter, MC, in 2018. (Doc. 33 at 1.) After MC's birth, Virnig allegedly signed a notarized agreement to terminate his parental rights. (Doc. 62 at 1.) In 2021, after the Juvenile Department of the Maricopa County Superior Court accepted this agreement and terminated Virnig's parental rights, Virnig claimed the agreement was forged and began attempting to regain his rights. (Doc. 62 at 5.) The

juvenile court proceeding culminated in a 44-day trial in 2023 which restored Virnig's parental rights. (Doc. 62 at 6.) That decision is currently on appeal. (Doc. 62 at 6.)

According to plaintiffs, Virnig conducted various malicious acts while attempting to assert his parental rights in the juvenile-court litigation—including alleging MC was the product of an incestuous relationship between Angelica and her father (Doc. 62 at 16)—prompting multiple court and expert statements indicating Virnig did not have his child's best interests in mind (Doc. 62 at 7-8, 18). He also frequently demanded unreasonably-high sums in exchange for resolving the juvenile action. (Doc. 62 at 15 (Virnig requests equal parenting schedule *and* $10,000,000).)

Angelica's and Virnig's families both became involved in the juvenile proceeding in circumstances that remain difficult to understand. Virnig allegedly filed a motion in the juvenile proceeding seeking $2,000,000 in fees from Angelica and her parents, despite her parents not being parties to the case (and despite attorneys' fees not being available in such proceedings). (Doc. 62 at 8.) Meanwhile, Virnig's uncle, Stephen Rayment, provided Virnig with "over $3,000,000" pursuant to litigation funding agreements. (Doc. 62 at 8-9.) Plaintiffs argue these agreements are shams because their terms suggest Rayment will receive percentages of any money awarded in the case even though there are no expected damages (Doc. 62 at 7-8), and because they were falsely notarized (Doc. 62 at 17.) They also allege that while some of Rayment's money went toward litigation expenses, "a significant portion" of it was used for "non-litigation related expenses." (Doc. 62 at 10.) Plaintiffs also allege Rayment sent a barrister employed by his consulting company Systech International to Arizona juvenile court, in order to "attend court hearings" and "assist" Virnig. (Doc. 62 at 2, 24.)

Some of Virnig's alleged malicious acts took place outside the litigation context. Virnig's then-girlfriend, Kameren Wilburn,[1] recorded a social worker's meeting with Virnig and "hacked" into the Riziks' Roku television account. (Doc. 62 at 18-20.) Plaintiffs

---

[1] After the court dismissed Wilburn as a defendant with leave to amend, the current complaint removes her from the list of named defendants. (Doc. 62 at 4.) Confusingly, it also later refers to her as a defendant and makes specific allegations against her. (*See* Doc. 62 at 25.) The court disregards those statements, which appear to be copy-and-paste errors.

also allege Virnig filed a complaint against Angelica last year with the Department of Child Safety, claiming MC was being sexually abused; that investigation was quickly closed. (Doc. 62 at 21.) Before it was closed, Angelica received a phone call from a person impersonating a police officer and claiming he was taking over the investigation. (Doc. 62 at 21-22.) Plaintiffs allege Virnig made the call himself or had an agent do it. (Doc. 62 at 22.)

Plaintiffs allege multiple state-law claims and a RICO violation, the claim that brings this case to federal court. This court previously granted defendants' motion to dismiss the RICO claim and declined to exercise supplemental jurisdiction over the other claims. (Doc. 58.) In doing so, the court instructed plaintiffs upon amendment to "carefully consider whether there is a realistic possibility they can state a viable RICO claim." (Doc. 58 at 11.) Plaintiffs then filed the Second Amended Complaint ("SAC") and defendants again moved to dismiss. (Docs. 62; 65).

## II.    Legal Standard

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (simplified). This is not a "probability requirement," but a requirement that the factual allegations show "more than a sheer possibility that a defendant has acted unlawfully." *Id.* A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "Determining whether a complaint states a plausible claim for relief . . . [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679.

## III.    RICO Analysis

To state a civil RICO claim, a plaintiff must plausibly allege "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity (known as 'predicate acts') (5) causing injury to the plaintiff's 'business or property.'" *Grimmett v. Brown*, 75 F.3d 506, 510 (9th Cir. 1996) (simplified); *see also* 18 U.S.C. § 1961 *et seq*.

This court previously warned plaintiffs there were so many problems with the RICO allegations that they would need to "fundamentally alter[] their theory of the claim and the factual allegations on which it rests" if they wished to amend. (Doc. 58 at 11.) They chose not to, so most of the same problems persist in the SAC. Dispositively, they do not adequately allege an enterprise exists nor do they allege predicate acts that caused injuries to *them*.

### A. No Plausible Enterprise

An enterprise "is an entity separate and apart from the pattern of activity in which it engages." *United States v. Turkette*, 452 U.S. 576, 583 (1981). Plaintiffs must therefore show each defendant "participate[d] in the operation or management of the enterprise itself," rather than "just their own affairs." *Reves v. Ernst & Young*, 507 U.S. 170, 185 (1993). There must be "a group of persons associated together for a common purpose of engaging in a course of conduct," shown via evidence the organization was ongoing and the associates functioned as a continuing unit. *Boyle v. United States*, 556 U.S. 938, 944-45 (2009). The enterprise need not have a formal structure, hierarchy, or fixed roles, but an "association-in-fact" enterprise requires a common purpose, relationships among those associated with it, and sufficient longevity to pursue that common purpose. *Id*. at 944-48. Among many other issues with their earlier complaint, plaintiffs failed to allege a common purpose outside Virnig's own goals and failed to sufficiently allege the relationships between those associated with the enterprise. (Doc. 58 at 8.)

The SAC now alleges an enterprise exists between Rayment, Virnig, and Systech in which Rayment "funded, directed, approved," and helped direct strategy for Virnig's litigation and Systech provided infrastructure. (Docs. 68 at 4; 62 at 13.) But Rayment's assistance does not appear to go beyond that of someone assisting a family member in pursuing that family member's personal litigation goals. *See State Comp. Ins. Fund v. Khan*, No. SACV1201072CJCJCG, 2016 WL 6440138, at *3 (C.D. Cal. July 6, 2016) ("It is commonplace for other people, such as family members or litigation funders, to advance the funds necessary for a party's defense."). Though Virnig's litigation goals may be

malicious, no allegations suggest Rayment is funding them for the benefit of a separate enterprise entity instead of for his nephew's benefit. (*See* Doc. 62 at 7-8 (noting state-court litigation will not result in damages from which Rayment could take a percentage).) Plaintiffs also cite no case-law suggesting parties to a case and their litigation funders may qualify as a RICO enterprise. *Cf. Bai v. CMB Exp. Infrastructure Inv. Grp. 48, LP*, No. 2:24-CV-00807-DJC-SCR, 2025 WL 959099, at *7 (E.D. Cal. Mar. 31, 2025) (no common purpose where allegations are predicated on routine business relationship, including litigation relationship). They do allege some of Rayment's litigation funding went toward non-litigation expenses (Doc. 62 at 10), which may suggest a non-litigation-related common purpose, but that conclusion is supported by no facts or further details. *Ashcroft*, 556 U.S. at 678.

Meanwhile, plaintiffs still only faintly allege Systech's involvement. After the court previously found no allegations tying Systech to the enterprise (Doc. 58 at 7), plaintiffs added one paragraph regarding Systech's involvement stating the enterprise used Systech's "infrastructure," including email accounts and personnel. (Doc. 62 at 14.) But there is no further detail besides an allegation this court previously found confusing and unconvincing (Doc. 58 at 7): that Rayment's "own barrister," a Systech employee, somehow assisted Virnig (Doc. 62 at 14). Even if plaintiffs sufficiently described that assistance, and even if they alleged the barrister acted on Systech's behalf, the "independent actions of a few employees are insufficient to support the existence of a relationship between [those employees] for the purposes of a RICO enterprise." *Jimenez v. Serv. Emps. Int'l Union Loc.* 775, 590 F. Supp. 3d 1349, 1362 (E.D. Wash. 2022), *aff'd*, No. 22-35238, 2023 WL 6971457 (9th Cir. Oct. 23, 2023); *see also Loomer v. Zuckerberg*, No. 23-3158, 2025 WL 927186, at *2 (9th Cir. Mar. 27, 2025), *cert. denied*, No. 25-19, 2025 WL 2824501 (U.S. Oct. 6, 2025) (affirming RICO dismissal where complaint contained no "allegations of an actual structure").

Plaintiffs acknowledge RICO claims may be dismissed where complaints allege "conduct consistent with each defendant acting in its own financial or professional interest

rather than pursuing a coordinated enterprise scheme." (Doc. 68 at 5.) But that remains true here. At base, the SAC's allegations suggest Virnig conducted litigation for malicious purposes, his uncle helped him, and his uncle worked for Systech. That is not a RICO enterprise engaging in a pattern of racketeering activity. *See Cooper v. Takayama*, No. CV 21-00144 JAO-KJM, 2022 WL 22955467, at *4 (D. Haw. Jan. 24, 2022) (no RICO claim where "Plaintiff effectively alleges one purported scheme (to wrongly influence [litigation] proceedings), one purported injury (compelling a settlement that was less advantageous to Plaintiff), and one purported victim (Plaintiff)").

### B. Lack of Predicate Acts

Plaintiffs also fail to establish defendants committed qualifying predicate acts. It is still not clear from the SAC itself which acts plaintiffs believe constituted the requisite "predicate acts" supporting their RICO claim. Plaintiffs allege a variety of litigation misconduct but, like before, do not provide facts sufficient to plead that litigation is a "sham." *Sosa v. DIRECTV, Inc.*, 437 F.3d 923, 939 (9th Cir. 2006). Those acts therefore cannot be the RICO predicates plaintiffs need. Plaintiffs' motion-to-dismiss briefing appears to concede the only predicate acts at issue are the wire fraud they allege occurred each time Rayment sent Virnig a litigation-funding payment. (Doc. 68 at 11.) The SAC does contain more specifics regarding those payments, but plaintiffs run into a fatal problem when attempting to rely on them as wire-fraud predicates in the RICO context.

As the court noted in its earlier order, "it is unclear who is defrauded by an improperly notarized litigation funding agreement when these arrangements are generally permissible and both parties to the agreement consent with full knowledge of its terms." (Doc. 58 at 10.) Plaintiffs now argue the wires at issue were an attempt "to avoid tax consequences" when Rayment transferred money intended to "sustain[]" the enterprise's litigation activity. (Doc. 68 at 8.) The crux of plaintiffs' theory making the payments fraudulent relies on defendants defrauding tax authorities despite each party understanding the nature of their own funding agreements. But the Supreme Court has squarely held plaintiffs do not have viable RICO claims based on defendants defrauding tax officials.

*Anza v. Ideal Steel Supply Corp.*, 547 U.S. 451, 457-58 (2006). Because a plaintiff's compensable injury must be "the harm caused by predicate acts," wire fraud victimizing tax authorities rather than the plaintiffs is too attenuated to support a RICO violation. *Id*. The same is true here: plaintiffs allege defendants used payments under the litigation agreements to commit tax violations and then used the money to harm them. (Doc. 68 at 8.) Because it is the tax authorities, not plaintiffs, who were defrauded, plaintiffs have not pleaded any viable predicate acts to support their RICO suit.

## IV.    Conclusion

The SAC made no meaningful changes to its RICO allegations and that claim is dismissed. Because plaintiffs already amended this claim and come no closer to curing its many flaws, further leave to amend is denied. *See Kendall v. Visa U.S.A., Inc*., 518 F.3d 1042, 1051-52 (9th Cir. 2008) (affirming denial of leave to amend as futile where prior district court order put plaintiffs "on notice . . . of the same defects" that led to dismissal of amended complaint); *Metzler Inv. GMBH v. Corinthian Colls., Inc*., 540 F.3d 1049, 1072 (9th Cir. 2008) ("[T]he district court's discretion to deny leave to amend is particularly broad where plaintiff has previously amended the complaint.") (quotations omitted).

The court again declines to exercise supplemental jurisdiction over the remaining state-law claims. 28 U.S.C. § 1367(c)(3). Those claims involve events centered on state-court cases and the case has not meaningfully progressed in the federal system, so the factors of economy, convenience, fairness, and comity favor dismissal. *Exec. Software N. Am., Inc. v. U.S. Dist. Ct. for Cent. Dist. of California*, 24 F.3d 1545, 1557 (9th Cir. 1994), *overruled on other grounds by California Dep't of Water Res. v. Powerex Corp.*, 533 F.3d 1087 (9th Cir. 2008); *see Slidewaters LLC v. Washington State Dep't of Lab. & Indus*., 4 F.4th 747, 762 (9th Cir. 2021) ("in the usual case in which all federal-law claims are eliminated before trial, the balance of factors will point toward declining to exercise jurisdiction over the remaining state-law claims" (simplified)).

/

- 7 -

Accordingly,

**IT IS ORDERED** the Motion to Dismiss (Doc. 65) is **GRANTED**. The Second Amended Complaint is **DISMISSED WITHOUT LEAVE TO AMEND**. The federal claim is dismissed on the merits, and the court does not exercise jurisdiction over the state law claims. The Clerk of Court shall enter judgment accordingly and close this case.

Dated this 15th day of July, 2026.

**Honorable Krissa M. Lanham**
**United States District Judge**

- 8 -